UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES A. ANDERSON, | Case No. 0:06-CV-5028 (PJS/JJG) |
| Plaintiff, | |
| v. | |
| JOHN S. SPREITER, MARY E. SPREITER, HOME STATE BANK, a Minnesota corporation, CJB, LLC, a Minnesota limited-liability company, BANKEN REAL ESTATE INVESTMENTS, LLC, a Minnesota limited-liability company, and CHAD BANKEN, | |
| Defendants. | MEMORANDUM OPINION AND ORDER |
| JOHN S. SPREITER, MARY E. SPREITER, and HOME STATE BANK, a Minnesota corporation, | |
| Cross-claimants, | |
| v. | |
| CJB, LLC, a Minnesota limited-liability company, | |
| Cross-defendant. | |

Michael T. Kallas, KALLAS & ASSOCIATES, LTD., for plaintiff.

Barton C. Gernander, HELLMUTH & JOHNSON PLLC, for defendants/cross-claimants John S. Spreiter, Mary E. Spreiter, and Home State Bank.

Jack E. Pierce, PIERCE LAW FIRM, P.A., for defendants Banken Real Estate Investments, LLC, and Chad Banken, and for defendant/cross-defendant CJB, LLC.

I.  BACKGROUND

This suit arises out of a series of real-estate transactions related to a property in Litchfield, Minnesota.  The property was owned by plaintiff James Anderson's family for many years.  Anderson bought the property from his parents in January 1999.  A few years later, Anderson experienced financial problems.  As a result, Anderson's mortgage lender foreclosed on the property, and it was sold at a sheriff's sale in June 2003.

In June 2004, just before the expiration of Anderson's one-year period for redeeming the property from the sheriff's sale, Anderson entered into a transaction with defendant Chad Banken and his companies, defendants CJB, LLC ("CJB") and Banken Real Estate Investments, LLC ("BREI") (collectively, "the Banken defendants").  In form, Anderson sold the house by warranty deed to CJB and Anderson was given an option to repurchase the house.  In substance, the transaction may have been something different, as is discussed below.  No matter how the transaction is characterized, though, it gave Anderson the cash he needed to redeem the property, and it permitted him to stay in his house at least temporarily.[1]

In September 2005, CJB ostensibly sold the Anderson property to defendants John and Mary Spreiter.  The Spreiters financed the sale by borrowing money from defendant Home State Bank (John Spreiter's employer) and purporting to grant Home State Bank a mortgage on the property.

Anderson contends that his June 2004 transaction with CJB should be treated as an equitable mortgage under Minnesota law, and he seeks a declaratory judgment to that effect.

---

[1]The transaction also involved Anderson's then-wife, Amy Anderson.  She is not involved in this suit, however, so the Court refers only to James Anderson in this order.

Although the transaction was formally structured like a sale and an option to repurchase, Anderson contends that it was in fact a financing transaction in which CJB loaned him money and he, in turn, granted CJB a mortgage on the property to secure the loan.  Anderson also contends that defendants violated the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §§ 1601-15.  Finally, Anderson seeks an injunction prohibiting CJB or the Spreiters from taking possession of the property.

The Banken defendants move for summary judgment, as do the Spreiters and Home State Bank (collectively, "the Spreiter defendants").  All defendants contend that, based on the undisputed facts, the June 2004 transaction between Anderson and CJB was a sale, not an equitable mortgage.  Banken, as an individual, further contends that he was not a party to the transaction and is therefore entitled to summary judgment.  The Court grants summary judgment to Banken individually, but otherwise denies defendants' motions.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party.  *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006).  In considering a motion for summary judgment, a court "must view the evidence and the inferences

that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B.  Equitable-Mortgage Doctrine

The function of the equitable-mortgage doctrine is to allow the substance of certain real-estate transactions to trump their form.  This doctrine recognizes the functional equivalence of two types of transactions:  First, a prospective purchaser of real estate might borrow money from a lender and grant that lender a security interest — a mortgage — in the property being purchased.  The purchaser would then pay off the loan over time and eventually own the property.  Second, a prospective purchaser of real estate might ask a third party to buy the property outright but to grant the prospective purchaser the right to occupy the property and purchase it over time, whether through a contract for deed or some other arrangement (such as a lease with an option to buy).  The two transactions are very similar:  In both cases, a third party advances the money needed to buy the property, and the prospective purchaser makes payments over time to the third party, with the eventual result (if all the payments are made) that the prospective purchaser owns the property.

Under the equitable-mortgage doctrine, "when the real nature of a transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, whatever the form of the instrument of conveyance taken as the security, it is treated in equity as a mortgage." *Albright v. Henry*, 174 N.W.2d 106, 111 (Minn. 1970).  The Minnesota Supreme Court summed up the "basic philosophy" underlying the doctrine in *Ministers Life & Casualty Union v. Franklin Park Towers Corp.*:

> [A] court will exercise its equitable powers to effectuate the intent of both parties to a transaction and to prevent any overreaching by one party which would unfairly exploit the other party's financial position or relative lack of expertise in real estate dealings.

239 N.W.2d 207, 210 (Minn. 1976).

The key issue in equitable-mortgage cases is the intention of the parties: Did they engage in a transaction that, although structured as a sale to the party advancing the funds for purchasing the property, was in fact a loan from that party in exchange for a security interest in the property? Under *Westberg v. Wilson*, the parties' intention

> is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances. This includes the previous negotiation of the parties. *We are not limited to the papers* for the purpose of ascertaining the true intention of the parties. We consider their relative situation, and generally *all pertinent facts* having a tendency to fix and determine the real nature of their design and understanding.

241 N.W. 315, 316 (Minn. 1932) (emphasis added; citations omitted). A party asserting that an apparent sale was in fact an equitable mortgage — Anderson, in this case — bears the burden of proving this by clear and convincing evidence. *St. Paul Mercury & Indem. Co. v. Lyell*, 11 N.W.2d 491, 494-95 (Minn. 1943); *see also Beasy v. Misko*, 211 N.W.2d 881, 882 (Minn. 1973) (describing proof of an equitable mortgage as "clear, strong, and convincing"); *Nelson v. Helmbrecht*, 193 N.W. 688, 689 (Minn. 1923).

As the passage from *Westberg* quoted above makes clear, equitable-mortgage cases are necessarily fact-specific. Accordingly, despite the heightened burden of proof in such cases, Minnesota courts have said that the existence of an equitable mortgage is a question for the trier of fact. *See Gagne v. Hoban*, 159 N.W.2d 896, 900 (Minn. 1968) ("In the final analysis, the question of whether the parties to a conveyance really intended it to be absolute or security for

indebtedness is for the triers of fact."); *Nitkey v. Ward*, 271 N.W. 873, 876-77 (Minn. 1937). And in *City of Shakopee v. Kopp & Associates*, the Minnesota Supreme Court reversed a grant of summary judgment because a dispute of fact was created by the parties' dueling affidavits about whether a transaction was intended as an outright transfer of property or as the mere grant of a security interest in the property. 159 N.W.2d 901, 903 (Minn. 1968).

Given the fact-specific nature of equitable-mortgage cases, it is difficult to generalize about them. In *Brown v. Grant Holding, LLC*, however, this Court identified the following six factors that, under Minnesota law, must be considered in any case: (1) evidence about the parties' intent, as reflected in transaction-related documents, testimony, and affidavits; (2) the disparity between a property's sale price and its value; (3) the nature of the solicitation that gave rise to the transaction; (4) whether the property was placed on sale in the open market; (5) whether the parties negotiated a sale price; and (6) whether the party asserting the existence of an equitable mortgage continued to live in the property after ostensibly selling it. 394 F. Supp. 2d 1090, 1097-99 (D. Minn. 2005); *see also Jones v. REES-MAX, LLC*, 514 F. Supp. 2d 1139, 1146 (D. Minn. 2007) (applying *Brown* factors).

A further, crucial factor is the sophistication of the party seeking the protection of the equitable-mortgage doctrine. As noted above, *Ministers Life* described the doctrine's purpose as both to effectuate the parties' intent *and* "to prevent any overreaching" by which a more-sophisticated party might "unfairly exploit the other party's financial position or relative lack of expertise in real estate dealings." 239 N.W.2d at 210. Significantly, in many cases in which Minnesota courts have refused to apply the equitable-mortgage doctrine, the party seeking the protection of the doctrine was represented by a lawyer or was an otherwise sophisticated party.

*See First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (affirming trial court's rejection of bank's claim of an equitable mortgage where "the renewal note drafted by the bank conclusively states that it is an unsecured loan"); *Ministers Life*, 239 N.W.2d at 211 (noting that the president of the company asserting the equitable-mortgage doctrine was "a lawyer with unusual expertise in complex real estate financing"); *Nitkey*, 271 N.W. at 878 (affirming trial court's rejection of a real-estate speculator's equitable-mortgage claim and noting that "[h]e knew the difference between a sale and a loan, a mortgage and an absolute conveyance, a deed and a leasehold"); *Bliss v. Swendra*, No. C1-89-1444, 1990 WL 43054, at *2 (Minn. Ct. App. Apr. 17,1990) (affirming trial court's rejection of a party's equitable-mortgage claim where that party's attorney drew up the relevant documents).

*C. The June 2004 Transaction*

After Anderson's property was sold at a sheriff's sale in June 2003, Anderson attempted to find financing so that he could redeem the property. Various banks turned him down. Anderson Aff. ¶ 11 [Docket No. 28]. He then contacted a mortgage broker, Faith Rocha, who put him in contact with Banken. *Id.* ¶¶ 12-13. Notably, Rocha was a mortgage broker, not a real-estate agent, and Anderson never listed his property for sale on the open market. Further, at least as compared to Banken — who is in the real-estate business — Anderson is neither sophisticated nor particularly experienced in real-estate matters.

On June 18, 2004, Anderson and the Banken defendants entered into a series of related transactions with respect to the property. CJB borrowed $195,000 from Home State Bank to finance CJB's ostensible purchase of the property from Anderson. Anderson Dep. Ex. 10

(HUD-1 line 504).[2]  Of that amount, roughly $143,000 was provided to Anderson, and he used that money to redeem the property from the sheriff's sale.  *Id.*; Anderson Dep. Ex. 6.  Another roughly $24,000 of the $195,000 was paid into an account at Home State Bank for the benefit of the Banken defendants.  Anderson Dep. Ex. 10 (HUD-1 line 1307); Anderson Aff. ¶ 19.  The balance of the $195,000, plus an additional $2,000 that Anderson himself brought to closing, went toward financing costs, administrative fees, an escrow account for septic-system repairs, and paying off various taxes and liens on the property.  Anderson Dep. Ex. 10.  In exchange for the Banken defendants' payments, Anderson executed a warranty deed transferring the property to CJB.  Anderson Dep. Ex. 9.  Anderson and Banken also signed a purchase agreement with respect to the transfer, but the space for the buyer's name on the agreement's first page was left blank.  Anderson Dep. Ex. 7.

Anderson — the purported seller of the property — did not take any cash away from this transaction.  Anderson Aff. ¶ 18; Anderson Dep. Ex. 10.  Indeed, as noted, Anderson *paid* $2,000 in cash at closing.  Further, the dollar amount of the transaction was driven not by the property's assessed value, but rather by the amount needed to redeem the property from the sheriff's sale and to pay off encumbrances on the property, plus various transaction costs (including, as noted, a fee of roughly $24,000 paid to the Banken defendants).  Although there is a dispute of fact over the property's market value, it is undisputed that in 2003, for tax purposes, the property was valued between $221,500 and $282,700.  Anderson Aff. Ex. C.  Thus, the Banken defendants not only received a "fee" of $24,000, but (if Anderson's evidence is believed), they also managed to

---

[2]Anderson's deposition transcript and the associated exhibits are attached as Exhibit A to the Gernander affidavit [Docket No. 23].

purchase the property for roughly $25,000 to $100,000 less than its value — a tidy profit on a $195,000 transaction.

Further, the transaction was structured so that Anderson would remain in the property despite the ostensible sale. Anderson and BREI entered into a document titled "First Right of Refusal" the day of the ostensible sale. Anderson Dep. Ex. 8. Under that document (which recognized "the unique circumstances of this transaction"), BREI granted Anderson an option, valid for fifteen months, to purchase the property for a total of $220,000 ($5,000 to be paid within a week, and the balance to be paid when the option was exercised). The document also obligated Anderson to pay all property taxes and insurance. The record does not show why it was BREI that granted Anderson an option to purchase the property even though it was CJB to whom Anderson transferred the property by warranty deed.

All of the facts discussed above suggest, in light of the relevant factors under Minnesota's equitable mortgage-doctrine, that Anderson's equitable-mortgage claim cannot be decided on summary judgment. To support their summary-judgment motions, the defendants focus on the transaction documents themselves, on Banken's affidavit about his intentions, and on Anderson's deposition testimony. Banken Defs. Mem. Supp. Mot. S.J. at 3-5, 7 [Docket No. 17]; Spreiter Defs. Mem. Supp. Mot. S.J. at 5-7, 18-20 [Docket No. 22]. But none of these three pieces of evidence justify granting defendants' motions.

First, as to the transaction documents: While it is true that the documents on their face reflect a sale from Anderson to CJB, that fact alone cannot defeat Anderson's equitable-mortgage claim. Again, the entire purpose of the equitable-mortgage doctrine is to pierce the form of a transaction and give effect to its substance. In virtually every equitable-mortgage case, the

documents will reflect a sale rather than a mortgage; equity-strippers are rarely so stupid as to insert into their documents a statement to the effect, "This is really a mortgage, but we're not calling it a mortgage so that we can evade federal and state laws protecting mortgagors." Obviously, to give controlling weight to the form of a transaction would be to render the equitable-mortgage doctrine toothless.

Second, as to the Banken affidavit: Banken's assertion that he "intended the transaction in this matter to be a sale and not a loan," Banken Aff. ¶ 2 [Docket No. 18], is certainly evidence about the parties' intentions. But a reasonable jury could disbelieve this assertion in light of the other evidence about the transaction recounted above.

Finally, as to Anderson's deposition testimony: Anderson's testimony does not establish, beyond dispute, that he intended an absolute sale of his property to CJB. It is true that, when pressed by the lawyer for the Banken defendants, Anderson acknowledged that he had executed a purchase agreement in which he agreed to sell his property to CJB. Anderson Dep. Ex. 132-37. But the parties have never disputed that Anderson signed a document that in *form* evidenced a sale of his property to CJB; what is disputed is whether the *substance* of the transaction matched its form. And on that point, the following exchange between Anderson and the lawyer for the Spreiter defendants is significant:

> Q: Do you recall whether you ever signed a loan agreement with CJB, LLC?
>
> A: The loan agreement would be that right of first refusal, *I thought that was the loan agreement*.
>
> Q: You believe you did sign a loan agreement?
>
> A: If that would constitute a loan agreement, yes.

-10-

> Q: You are not sure if that does constitute a loan agreement or not?
>
> A: No. I'm not sure if it's the proper verbiage, but if that's considered a loan agreement, then that's what the right of first refusal is or first right of refusal.

Anderson Dep. at 85:5-19 (emphasis added). Further, in his affidavit, Anderson asserts that he did not intend to vacate the property, and that he entered into the June 18, 2004 transaction with Banken as a way to stay in the property. Anderson Aff. ¶¶ 14-15. In light of all of the evidence, a dispute of fact exists over whether the transaction was an outright sale or was, in fact, a loan from the Banken defendants to Anderson in return for a security interest in the property.

*D. Defendant Chad Banken*

The key transactions in this case were between Anderson and CJB (the ostensible sale on June 14, 2008) and Anderson and BREI (the "first right of refusal"). Although Banken is a principal in both entities and signed documents on their behalf, there is little indication that Banken acted in his personal capacity in entering into any transactions with Anderson. Banken therefore moves for summary judgment in his favor. Anderson apparently does not oppose this motion, as he did not address it in his brief opposing the defendants' summary-judgment motions. The Court therefore grants summary judgment to Banken individually.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendants CJB, LLC, Banken Real Estate Investments, LLC, and Chad Banken for summary judgment [Docket No. 15] is GRANTED IN PART as follows:

      a.      The motion is GRANTED with respect to defendant Chad Banken.

      b.      Plaintiff's claims against defendant Chad Banken are DISMISSED WITH PREJUDICE AND ON THE MERITS.

      c.      The motion is DENIED in all other respects.

2.      The motion of defendants John S. Spreiter, Mary E. Spreiter, and Home State Bank for summary judgment [Docket No. 20] is DENIED.

Dated: September 16, 2008

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge